MAUGHAM et al. v. PARKES SEWING MACH. CO. et al.

(Supreme Court, Appellate Division, First Department.   February 21, 1902.)

CORPORATIONS—PROMOTERS—AGREEMENT TO RAISE WORKING CAPITAL—TIME
  LIMIT—BREACH—REASSIGNMENT OF CONSIDERATION.

  A patentee of sewing machines in May, 1900, gave an option to plaintiffs to organize a corporation to operate under the patents. The option provided that time was of its essence, and, failing compliance, might be declared canceled. The time was extended, and a corporation organized in March, 1901. Thereupon a third person, apparently acting for plaintiffs, submitted a proposal to the directors, which was accepted, and pursuant to which a specified working capital was to be raised, and the third person undertook to have the patents assigned to the corporation. Trustees were appointed to hold the stock, which was to be sold to raise the capital. By a letter written the trustees in May, 1901, by the third person, the time for raising the capital would expire within six months. It was not raised within that time. There was no written agreement for the reassignment of the patents, but the patentee swore that that was the understanding, and he was corroborated by others connected with the corporation. One of the plaintiffs was present at a meeting of the committee of directors, and himself proposed a resolution providing for the reassignment. *Held* to establish that the patentee was equitably entitled to the reassignment, and that an injunction restraining the corporation for making it should not be continued.

Appeal from special term, New York county.

Injunction by John H. Maugham and Samuel F. Cohalan against the Parkes Sewing Machine Company, William N. Parkes, and others. From an order continuing a temporary injunction, defendants appeal.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON. INGRAHAM, and LAUGHLIN, JJ.

A. McCulloh, for appellants.

Joseph F. Daly, for respondents.

PATTERSON, J.   The acts, the performance of which were enjoined by the order from which this appeal is taken, had been performed and completed before the action was brought; but, irrespective of that consideration, the equities of the case, as the facts are presented in the record before us, are so strongly with the defendant Parkes that the order must be reversed on the merits.   By the terms of the order, the defendants are enjoined and restrained from calling or holding or voting at any meeting of the board of directors of the defendant corporation for the purpose of ratifying or confirming proceedings of a meeting of that corporation held November 8, 1901, and from doing any act or acts in confirmation or ratification of such proceedings, and from selling or transferring the property and assets of said defendant corporation, and from completing or carrying out any such transfer or sale, and from acting in any way in regard to such assets and property, except to preserve the same until the hearing and determination of this action and the entry of judgment therein.   The provisions of this order are particularly directed against the ratification of a resolution adopted by the directors of the Parkes Sewing Machine Company on the 8th day

of November, 1901, authorizing the reassignment by that corporation of certain patents to the defendant Parkes. It would appear that a meeting of the board of directors of that company had been called for November 25, 1901, for the purpose, among other things, of making that ratification; it being required by the by-laws of the company that the resolution of November 8th, to become binding and operative, should be ratified at a subsequent meeting of the board. The real issue to be considered here is whether the defendant Parkes was equitably entitled to those patents. He had assigned them to the Parkes Sewing Machine Company under contracts which he had made with it and with the plaintiffs. He claims the right to a reassignment of those patents by reason of the failure of the plaintiffs and those associated with or representing them to carry out the terms of their contract, and he insists that the resolution passed by the board of directors of the Sewing Machine Company on November 8th was so passed in recognition of his right, and that the plaintiffs, prior to the 8th of November, 1901, not only acquiesced in that right, but they both attended a meeting of the board of directors held on November 4, 1901, which was called for the purpose of passing resolutions authorizing a reassignment of the patents to him; that Maugham, one of the plaintiffs, was appointed a member of a committee to prepare proper resolutions for that end; that Maugham drew such resolutions, presented them to the committee himself, and stated that he was satisfied they would be approved by his coplaintiff Cohalan. These facts do not appear to be contradicted. That a meeting of the board of directors of the Parkes Sewing Machine Company was called for November 4, 1901, to consider the subject of the reassignment of the patents, is clearly shown; that that meeting was adjourned to November 6th, and then to November 8th, is also shown. The plaintiffs did not attend the meeting of the 6th or of the 8th, but after the 6th took the attitude, apparently for the first time, that the defendant Parkes was not entitled to a reassignment of the patents.

The transactions out of which the asserted right of Parkes arose seem to be somewhat involved and complicated, but they are in reality quite simple. He had taken out a number of patents for sewing machines and for embroidery machines, and by an arrangement with the plaintiffs two corporations were to be organized, one to operate under the patents for sewing machines, and the other to operate under the patents for embroidery machines. The corporation to operate under the sewing machine patents was to be called the Parkes Sewing Machine Company. The matters involved in this action are connected with that corporation alone. On the 23d of May, 1900, an option was given by Parkes to the plaintiffs to organize a corporation to acquire and operate under the Parkes patents, to capitalize such corporation, to divide the stock into preferred and common stock, to deliver to Parkes a certain amount thereof, and to furnish a working capital. This option was to be exercised within eight months, and it was provided that time was of the essence of the contract, and that, failing a compliance by either of the parties within that time, it should become optional with the other party

to declare the same canceled and of no further force; it being understood and agreed that, in the event of the cancellation of the agreement by such default, neither party should have any cause of action against the other. It appears that the time for the plaintiffs to accept that option was extended, and on the 2d of March, 1901, the corporation known as the Parkes Sewing Machine Company was organized under the laws of the state of Delaware, and a board of directors was elected. A proposal was submitted to that board by John P. Cohalan, who seems to have been acting for the plaintiffs. That proposal was accepted, and there was to be provided a working capital of not less than $125,000, from which was to be paid two items, aggregating about $20,000, and, in consideration of the raising of the working capital and other conditions, John P. Cohalan undertook to be caused to be executed assignments to the company of letters patent, applications, and inventions of Parkes, who was also to be employed as general superintendent for a period of five years. William H. Kimball and John H. Maugham were to be trustees for the purpose of holding stock which was to be sold for the purpose of raising this working capital. By a letter dated the 2d of May, 1901, directed by John P. Cohalan to the gentlemen named, the time within which the working capital was to be raised would expire within six months from the date of that letter, namely, November 2, 1901, and if it were not raised at that time the trustees were to transfer to Parkes all the stock held by them. The working capital was not raised within the time required. It appears that no business was ever done by the corporation under the patents. The only stockholders of the Parkes Sewing Machine Company, other than the defendant, are the plaintiffs, who together hold 17 shares, five other persons, who together hold 27 shares, of the preferred stock, and three persons, who together hold 30 shares of the common stock.

We do not think it is to be doubted, upon the affidavits and exhibits, that there was a breach of the agreement by which the plaintiffs and the Parkes Sewing Machine Company were bound to raise a working capital within a specified time. The defendant Parkes was under no obligation to raise any part of that working capital, but the plaintiffs were. In reliance upon the agreements that had been made, he had transferred his patents for sewing machines to the defendant corporation. His right to a retransfer of those patents is not predicated upon any specific written agreement or promise of the corporation or of the plaintiffs to that effect, but he swears that it was understood by the plaintiffs and all in interest that if the agreement to furnish the working capital was not carried out within the specified time then those patents were to revert to and be reassigned to him. In that statement he is fully corroborated by the affidavits of Newberry, of Kimball, and of Terry, all of whom are connected with the corporation. That the plaintiffs so understood it is clear, not from the affidavit of Parkes alone, but from that of Newberry, who swears that on the 6th of November, 1901, at a meeting of a committee of the board of directors (which committee was appointed on November 4th), the plaintiff Maugham was present, and himself presented certain resolutions to be passed by the Parkes

Sewing Machine Company, providing, among other things, for the transfer of the patents and patent rights to the defendant Parkes, which resolutions Maugham stated "were drawn up by me, and that the same are all right."

The attitude assumed by the plaintiffs in this matter in no way commends itself to the consideration of the court. Parkes' right, so far as we are now able to determine it, is made out, and he should not be embarrassed in his efforts to make what are conceded to be his valuable and useful patents available to himself or to some one else. The suggestion of a conspiracy between Parkes and others to take away the property of a corporation which belongs to it is not worthy of consideration, nor can the idea for a moment be entertained that the company, or the plaintiffs, or those whose duty it was to furnish the working capital, were prevented from doing so by reason of the neglect of Parkes to transfer to the company certain patents for improvements which he obtained after the formation of the company. As said before, the equities of the case are so strongly with the defendant Parkes that it would·be unjust to maintain an injunction against him.

The order must be reversed, with $10 costs and disbursements, and the motion for an injunction pending suit denied, with $10 costs. All concur.